1  BLANK ROME LLP
   Cheryl S. Chang (SBN 237098)
2  cheryl.chang@blankrome.com
   2029 Century Park East | 6th Floor
3  Los Angeles, CA 90067
   Telephone:  424.239.3400
4  Facsimile:   424.239.3434

5  Attorneys for Plaintiff
   AUXOCAP JC LLC

6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

8  AUXOCAP JC LLC,                         Case No.

9                       Plaintiff,         **COMPLAINT FOR:**

10     v.                                  1. **FRAUDULENT INDUCEMENT**
                                           2. **FRAUD**
11  CHARIS BURRETT, LUKE BURRETT,          3. **UNJUST ENRICHMENT**
    and THE MEDICINE WOMAN GROUP,          4. **TORTIOUS INTERFERENCE**
12  LLC,                                      **WITH CONTRACT**
                                           5. **CONVERSION**
13                       Defendants.       6. **UNFAIR COMPETITION**
                                              **(CAL. BUS. & PROF. CODE**
14                                            **§§ 17200 ET SEQ.)**

15                                         **DEMAND FOR JURY TRIAL**

16          Plaintiff AuxoCap JC LLC ("AuxoCap JC" or "Plaintiff"), by and through its

17  undersigned counsel, for its Complaint against Defendants Charis Burrett, Luke

18  Burrett, and The Medicine Woman Group, LLC ("TMW Group") (collectively,

19  "Defendants"), hereby alleges as follows:

20                       **STATEMENT OF THE CASE**

21          1.    This case exposes a deliberate raid on a secured lender's loan within hours

22  of the funding and the diversion of those funds for improper and unauthorized

23  purposes. Defendants Charis and Luke Burrett induced AuxoCap JC to advance a

24  $1,600,000 working capital loan expressly and exclusively for the buildout and

25  opening of a dispensary in Jersey City, New Jersey. Within twenty-four hours of

26  funding, they siphoned $500,000 to repay debt Luke Burrett owed to other creditors

27  and falsified the books to hide it. Over the ensuing months, they diverted additional

28  money from the loan proceeds to themselves and to a separate, unrelated dispensary

in Bellflower, California, while leaving vendors unpaid, manipulating POS data to mask nonpayment, and stripping and devaluing the collateral that secured AuxoCap JC's loan. The result is textbook fraud: intentional misrepresentations and concealment to procure financing, immediate misappropriation of proceeds, and a calculated dissipation of collateral to benefit the Burretts and their own entity at AuxoCap JC's expense. AuxoCap JC seeks immediate injunctive relief to freeze and recover assets, imposition of a constructive trust and equitable lien over diverted funds and property, appointment of a receiver as necessary to protect and marshal collateral, and an award of compensatory, consequential, and punitive damages for fraudulent inducement, fraud, unjust enrichment, tortious interference, conversion, and unfair competition.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and, on information and belief, is between citizens of different States. Plaintiff AuxoCap JC is a citizen of the States of New York and New Jersey and no member of AuxoCap JC is a citizen of California. Upon information and belief, Defendants Charis Burrett, Luke Burrett, and TMW Group are citizens of the State of California and no member of TMW Group is a citizen of New York or New Jersey.

3.      This Court has personal jurisdiction over Defendant Charis Burrett because, on information and belief, she resides in Orange County, California and directed and carried out the misconduct alleged herein from within this District, including authorizing, recording, and effectuating transfers of the loan proceeds and collateral into accounts located in this District.

4.      This Court has personal jurisdiction over Defendant Luke Burrett because, on information and belief, he resides in Orange County, California and directed and carried out the misconduct alleged herein from within this District,

including authorizing, recording, and effectuating transfers of the loan proceeds and collateral into accounts located in this District.

5.    This Court has personal jurisdiction over Defendant TMW Group because, on information and belief, its principal place of business is in Bellflower, California and it knowingly received and used diverted funds traceable to the loan proceeds and collateral in this District.

6.    Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to this action occurred in this District, including the direction, receipt, and use of diverted funds and the falsification of the Borrower's books and records.

## Parties

7.    Plaintiff AuxoCap JC is a limited liability company organized and existing under the laws of the State of Delaware.

8.    Defendant Charis Burrett is an individual who, on information and belief, is domiciled in California. Charis Burrett is a Manager of Defendant TMW Group. Charis Burrett is also a Manager of non-party The Medicine Woman LLC ("The Medicine Woman") and a Manager and "partnership representative" of non-party TMW JC Operations LLC ("TMW JC Operations"). She is also the wife of Defendant Luke Burrett.

9.    Defendant Luke Burrett is an individual who, on information and belief, is domiciled in California. Upon information and belief, Luke Burrett has and exercises control over Defendant TMW Group. Moreover, Luke Burrett is a Manager and "partnership representative" of non-party TMW JC Operations and, on information and belief, has and exercises control over non-party The Medicine Woman. He is also the husband of Charis Burrett.

10.    Defendant TMW Group is a limited liability company that, on information and belief, is organized and existing under the laws of the State of

California. Upon information and belief, TMW Group owns and operates a retail cannabis dispensary operation located at 9058 Rose Ave., Bellflower, CA 90706 (the "Bellflower Dispensary").

### Facts Common to All Claims for Relief

#### *AuxoCap JC extends a $1,600,000 loan to the Borrower.*

11.    The Medicine Woman and TMW JC Operations (collectively, the "Borrower") own and previously operated a retail cannabis dispensary operation located at 660 Tonnele Avenue, Jersey City, New Jersey 07307 (the "Jersey City Dispensary"). The Jersey City Dispensary and the Bellflower Dispensary are separate businesses with different ownership.

12.    In or about August 2024, AuxoCap JC agreed to extend, and did extend, a working capital loan in the original principal amount of one million six hundred thousand dollars ($1,600,000) to the Borrower, as documented by (i) the Promissory Note and (ii) the related Pledge and Security Agreement, between AuxoCap JC, on the one hand, and The Medicine Woman and TMW JC Operations, on the other hand.

13.    AuxoCap JC extended a working-capital loan to the Borrower for the express and exclusive purpose of constructing, equipping, and furnishing the Jersey City Dispensary, including completing all work necessary for the dispensary to open. AuxoCap JC reasonably and justifiably expected—and the Borrower's Managers, Charis and Luke Burrett, expressly and implicitly represented—that the loan proceeds would be used solely for that purpose and not diverted to the Burretts' personal and other business obligations. At no time did the Burretts disclose to AuxoCap JC that any portion of the loan proceeds would be used for their individual, personal expenses, for other business expenses unrelated to the Jersey City Dispensary, or for any purpose outside the scope of their roles with the Borrower.

14.    Nevertheless, at the time the loan was procured, the Burretts, on information and belief, intended to misappropriate the proceeds to pay their personal debts and to fund the Bellflower Dispensary, and they made affirmative

4

misrepresentations and concealed material facts to induce AuxoCap JC to fund the loan. AuxoCap JC reasonably and justifiably relied on the Burretts' material representations and omissions in extending the loan on those terms, and would not have done so absent that deception.

15.    On August 12, 2024, AuxoCap JC disbursed the loan amount to the Borrower.

16.    The Promissory Note provided that interest would accrue at a simple rate of ten percent (10%) per annum, with interest-only payments due quarterly during the term, and that the principal and accrued but unpaid interest would be due and payable on or after the stated maturity date upon demand or earlier upon an Event of Default as set forth therein.

17.    As collateral for the obligations under the Promissory Note, the Borrower granted and pledged to AuxoCap JC a continuing, first priority security interest in all assets of the Borrower, including "any and all cash, proceeds, funds, credits, licenses, rights, fixtures and other assets therein or arising therefrom, from time to time, and any additions, dividends, profits and interest in the foregoing and any replacements or substitutions therefore." Likewise, the Pledge and Security Agreement confirmed that the Borrower collaterally assigned to AuxoCap JC all of the Borrower's right, title, and interest in and to all assets of the Borrower, including "any and all licenses, rights and other assets therein or arising therefrom, from time to time, and any replacements or substitutions therefore."

18.    As additional consideration for the loan, AuxoCap JC was granted a twenty percent (20%) membership interest in TMW JC Operations.

### *The Borrower fails to make timely payments on the loan.*

19.    The Borrower timely made its first two required quarterly interest payments to AuxoCap JC under the Promissory Note.

20.    However, the Borrower failed to make the next required interest payment, thereby triggering an Event of Default under the Promissory Note.

5

21.   On November 13, 2025, AuxoCap JC sent a formal Notice of Default and Acceleration to the Borrower, addressed to Charis Burrett, Manager, advising that the Borrower failed to make the interest payment in the amount of $54,685.06 due on October 31, 2025; declaring all outstanding principal, accrued interest, and other amounts immediately due and payable; and reserving all rights and remedies.

22.   The Notice of Default also directed Borrower to immediately: (i) cease all sales, transfers, or other dispositions of assets outside the ordinary course of business; (ii) refrain from entering into any financial transactions, incurring additional indebtedness, or otherwise taking any actions outside the ordinary course of business without AuxoCap JC's prior written consent; and (iii) provide a written accounting of all current assets, liabilities, outstanding receivables, and pending or contemplated transactions.

23.   However, the Borrower failed to cure the default, surrender its collateral (to the extent any collateral remained), or consent to the appointment of a receiver.

***Charis and Luke Burrett used the loan proceeds for their own personal use and their other businesses & devalued and stripped the loan collateral assigned to AuxoCap JC.***

24.   After the default, AuxoCap JC undertook an investigation into the use of the loan proceeds and the financial condition of the Borrower.

25.   Based on that investigation, and on information and belief, Charis and Luke Burrett exercised actual control over, and had access to, the Borrower's finances and assets, including the loan proceeds, by virtue of Charis Burrett's role as the Manager of The Medicine Woman and Charis and Luke Burrett's roles as the Managers and "partnership representatives" of TMW JC Operations.

26.   AuxoCap JC's investigation revealed that Charis and Luke Burrett diverted and used the loan proceeds for their own personal use and for the benefit of other businesses that they owned or controlled, rather than for the business and operational needs of the Borrower to which the loan was dedicated (*i.e.*, the Jersey

City Dispensary). The investigation also revealed that Charis and Luke Burrett devalued, and stripped the Borrower of, the collateral assigned to AuxoCap JC.

27. AuxoCap JC's investigation revealed the following diversions and collateral impairments:

a. On August 13, 2024, the day after AuxoCap JC made the $1,600,000 loan to the Borrower, Charis and Luke Burrett caused $500,000 to be transferred from the Borrower to repay a personal loan extended to Luke Burrett by a third party. To conceal this improper transfer, Charis and Luke Burrett falsely recorded the transaction in the Borrower's general ledger as "Property $500k being returned to Burretts," despite the absence of any corresponding $500,000 contribution from the Burretts to the Borrower. During the course of AuxoCap JC's investigation, the Burretts admitted both the improper transfer and the false recordation to AuxoCap JC's representative.

b. Charis and Luke Burrett used the loan proceeds and company funds to pay obligations of the Bellflower Dispensary and its owner, TMW Group, including (i) payments totaling $68,540, from July to October 2025, from the Borrower's bank accounts to repay a FUND CANA loan made to the Burretts and collateralized by the Bellflower Dispensary, and (ii) payments totaling $123,888.83, from February to July 2025, from the Borrower's bank accounts transferred directly to the Bellflower Dispensary.

c. Charis and Luke Burrett used the loan proceeds and company funds to pay their personal expenses, including, on

information and belief, payments from the Borrower to American Express in the amount of $152,174.40 from October 2024 to June 2025.

    d. Charis and Luke Burrett failed to pay the Borrower's vendors, leaving nearly $500,000 in outstanding liabilities, while manipulating Point of Sale (POS) data to reflect vendor payments that were not made, thereby devaluing and impairing AuxoCap JC's collateral.

28. As evidenced by the foregoing, Charis and Luke Burrett used the Borrower as their personal "piggybank," paying themselves and their other companies, including TMW Group's Bellflower Dispensary, at the expense of the Borrower and stripping the Borrower of its remaining assets, thereby tarnishing and devaluing the collateral assigned to AuxoCap JC and impairing AuxoCap JC's ability to be repaid.

29. Charis and Luke Burrett knew the loan was conditioned on the proceeds being used for the Jersey City Dispensary's construction and opening. They nevertheless diverted funds for their personal use and their other businesses, falsified the Borrower's records to hide the transfers, and prioritized their own debts and the Bellflower Dispensary over the Borrower's obligations and vendors.

30. As of the date of this Complaint, and as a direct and proximate result of the Defendants' misconduct described above, including the diversion of loan proceeds, nonpayment of vendors, manipulation of financial records, and stripping and devaluation of collateral, the Jersey City Dispensary has permanently closed. The permanent closure has further impaired and diminished the value of AuxoCap JC's collateral, extinguished the Borrower's revenue-generating operations, and exacerbated AuxoCap JC's damages, leaving no going concern value at the Jersey City Dispensary and further undermining the prospects of recovery absent immediate equitable relief.

31.    Compounding the foregoing harm, and in violation of the Promissory Note and the Pledge and Security Agreement, Defendants Charis and Luke Burrett caused the Borrower to file a Deed of Assignment for the Benefit of Creditors. The Burretts undertook this assignment unilaterally and without AuxoCap JC's consent, thereby effectuating an improper transfer and disposition of substantially all of the Borrower's assets and rights, further frustrating AuxoCap JC's bargained-for remedies and first priority security interest.

32.    The permanent closure of the Jersey City Dispensary and the Deed of Assignment for the Benefit of Creditors have materially impaired AuxoCap JC's collateral, hindered and delayed AuxoCap JC's ability to realize upon its security interest, and increased the risk of dissipation of assets traceable to the loan proceeds.

***Charis and Luke Burrett acted with oppression, fraud, and malice and AuxoCap JC is entitled to punitive and exemplary damages.***

33.    Charis and Luke Burrett's conduct, as alleged herein, constitutes oppression, fraud, and malice. Within hours of AuxoCap JC's funding of the $1,600,000 loan dedicated exclusively to the Jersey City Dispensary, the Burretts siphoned $500,000 to repay Luke Burrett's personal debt and falsified the Borrower's general ledger to conceal the diversion by falsely characterizing it as "Property $500k being returned to Burretts." They then continued diverting substantial loan proceeds and company funds for personal expenses and to prop up an unrelated business they owned and controlled—the Bellflower Dispensary—while manipulating the Borrower's financial records and Point of Sale data to mask the dissipation of collateral and nonpayment of vendors. These affirmative misrepresentations, material concealments, and calculated falsifications were undertaken to induce AuxoCap JC to part with its money and to prevent detection of Defendants' ongoing misappropriation, demonstrating intentional deceit and a willful and conscious disregard for AuxoCap JC's rights and security interests.

34.    Charis and Luke Burrett's scheme was not an isolated error; it was a deliberate, sustained course of misconduct designed to enrich Defendants at AuxoCap JC's expense, culminating in the stripping and devaluation of collateral, the permanent closure of the Jersey City Dispensary, and the filing of the Deed of Assignment for the Benefit of Creditors to frustrate AuxoCap JC's bargained-for remedies and first priority security interest. The nature, timing, and concealment of the transfers; the falsified books and records; and the manipulation of POS data reflect despicable conduct carried out with a conscious disregard of known risks to AuxoCap JC.

35.    Unfortunately, this appears to be yet another piece in the Burretts' pattern of misconduct. In a previous lawsuit brought by an investor and company against Charis and Luke Burrett, the plaintiffs alleged that the Burretts were similarly charging or otherwise causing the plaintiffs to pay for personal expenses and expenses unrelated to the company, thereby using the company as their personal slush fund, harming the financial interests of the investor, and threatening the very existence of the company. *See Collins et al. v. Burrett et al.*, Case No. 2023-01317255 (Ca. Sup., Orange Cnty.).

36.    Under these facts, punitive and exemplary damages are necessary and appropriate to punish Charis and Luke Burrett and to deter similar misconduct, in addition to compensating AuxoCap JC for the substantial harm caused by Defendants' fraudulent inducement, fraud, unjust enrichment, tortious interference, conversion, and unfair competition.

37.    If not forced to face the consequence of their misconduct, AuxoCap JC will be left with an unpaid loan and growing interest, and the Defendants will be permitted to abscond with the loan proceeds and operate their Bellflower Dispensary without repercussion. That cannot be condoned.

**<u>First Cause of Action</u>**

**Fraudulent Inducement**

**Against Defendants Charis Burrett and Luke Burrett**

38.    AuxoCap JC realleges and incorporates by reference the allegations against Defendants Charis Burrett and Luke Burrett contained in paragraphs 1 through 37 as though fully set forth herein.

39.    Prior to AuxoCap JC's agreement to extend the $1,600,000 loan to the Borrower in August 2024, Charis and Luke Burrett, both acting individually, made affirmative representations and omissions to AuxoCap JC regarding the Borrower's intended use of loan proceeds, the Borrower's then-current financial condition, the existence and extent of obligations to vendors and third parties, and the sufficiency and integrity of the collateral pledged to secure the loan.

40.    Specifically, Charis and Luke Burrett represented, in substance, that the loan proceeds would be used for the Jersey City Dispensary in the ordinary course of business and not for the Burretts' personal use or for the benefit of any other business owned or controlled by them.

41.    Charis and Luke Burrett also omitted and concealed material facts necessary to make their representations not misleading, including that: (i) they intended to and would immediately divert a substantial portion of the loan proceeds for their own personal benefit, including repayment of a personal loan to Luke Burrett; (ii) they intended to and would use the Borrower's loan proceeds and funds to pay personal expenses and to support other businesses, including the Bellflower Dispensary; (iii) the Borrower's books and records, including general ledger entries and Point of Sale information, would be manipulated to conceal diversions and nonpayment of vendors; and (iv) the collateral pledged to AuxoCap JC would be stripped, devalued, and encumbered through the Burretts' planned conduct.

42.    The foregoing representations and omissions were material to AuxoCap JC's decision to lend. AuxoCap JC expressly conditioned its willingness to extend

11

credit on its understanding that loan proceeds would be applied to legitimate Borrower business needs, that the Borrower's financial reporting was accurate and reliable, and that the collateral would remain intact and available to secure repayment.

43. At the time these statements were made and the omissions occurred, Charis and Luke Burrett knew they were false and misleading. Among other things, on August 13, 2024—the day after funding—the Burretts caused the diversion of $500,000 from the Borrower to repay a personal loan to Luke Burrett and concealed the true nature of that diversion by falsely recording it as "Property $500k being returned to Burretts" in the general ledger. The Burretts contemporaneous conduct demonstrates that, before the execution and funding of the loan, they did not intend to use loan proceeds as represented, did not intend to maintain accurate books and records, and did intend to divert proceeds for personal and unrelated business purposes.

44. Charis and Luke Burrett made the foregoing misrepresentations and omissions with the intent to induce AuxoCap JC to rely upon them by approving and funding the loan to the Borrower on the agreed terms.

45. AuxoCap JC justifiably and reasonably relied on Charis and Luke Burrett's representations and omissions in agreeing to extend, and actually extending, the $1,600,000 loan. AuxoCap JC relied on the Burretts' positions of control, their apparent knowledge of the Borrower's operations and finances, and the Borrower's books and records and POS information that the Burretts prepared, controlled, or caused to be maintained. AuxoCap JC would not have made the loan had it known the true facts regarding the Burretts' intended and actual misuse of proceeds, manipulation of records, nonpayment of vendors, and planned dissipation of collateral.

46. As a direct and proximate result of Charis and Luke Burrett's fraudulent inducement, AuxoCap JC has suffered damages in an amount to be proven at trial.

47.   Charis and Luke Burrett's conduct was fraudulent, malicious, and oppressive, and carried out with willful and conscious disregard of AuxoCap JC's rights, entitling AuxoCap JC to an award of punitive and exemplary damages in an amount to be proven at trial.

### Second Cause of Action

### Fraud

### Against Defendants Charis Burrett and Luke Burrett

48.   AuxoCap JC realleges and incorporates by reference the allegations against Defendants Charis and Luke Burrett contained in paragraphs 1 through 47 as though set forth fully herein.

49.   At all relevant times, Charis and Luke Burrett exercised actual control over, and had access to, the finances and assets of the Borrower, including the $1,600,000 in loan proceeds AuxoCap JC disbursed on August 12, 2024, by virtue of their managerial positions and roles as "partnership representatives."

50.   On or about August 13, 2024, the day after AuxoCap JC funded the loan, Charis and Luke Burrett orchestrated and caused an improper transfer of $500,000 from the Borrower to repay a personal loan extended to Luke Burrett, and intentionally concealed the true nature of that diversion by falsely recording the ledger entry as "Property $500k being returned to Burretts."

51.   Following the loan funding and throughout 2024 and 2025, Charis and Luke Burrett knowingly diverted additional loan proceeds and company funds for their personal expenses and to benefit other businesses they owned or controlled, including the Bellflower Dispensary, while failing to pay the Borrower's vendors and debts. The Burretts also manipulated the Borrower's Point of Sale information to reflect vendor payments that were not in fact made, thereby concealing from AuxoCap JC the true financial condition of the Borrower and the dissipation of collateral.

52. Charis and Luke Burrett's acts and omissions constituted misrepresentations and concealment of material facts, including but not limited to: (i) the false ledger description of the $500,000 diversion; (ii) the concealment of the Burretts' ongoing diversion of the Borrower's loan proceeds and funds to themselves and their other businesses; (iii) the concealment of nonpayment of the Borrower's vendors and mounting liabilities; and (iv) the manipulation of POS data to create the false appearance of operational payments.

53. Charis and Luke Burrett knew the foregoing statements and omissions were false and misleading at the time they were made and concealed, and acted with the intent to deceive AuxoCap JC by creating the false impression that the loan proceeds and company funds were being used for legitimate Borrower business purposes and that the Borrower remained in sound financial condition.

54. Charis and Luke Burrett had a duty to disclose the foregoing material facts because they had exclusive, or superior, knowledge of material facts not reasonably accessible to AuxoCap JC, they made misleading representations in the Borrower's books and records and through manipulated POS information, and they actively concealed the diversion and dissipation of collateral while occupying positions of control over the Borrower's finances.

55. AuxoCap JC justifiably relied on Charis and Luke Burrett's misrepresentations and concealment, including by continuing to permit the Borrower's ongoing operations in the ordinary course of business and refraining from demanding additional protections or taking immediate remedial action. AuxoCap JC reasonably understood from the Borrower's financial records and reported POS data—controlled and manipulated by the Burretts—that funds were being applied to legitimate business purposes and vendor obligations.

56. As a direct and proximate result of Charis and Luke Burrett fraudulent conduct, AuxoCap JC has suffered damages in an amount to be proven at trial.

57.    Charis and Luke Burrett's conduct was fraudulent, malicious, and oppressive, and carried out with willful and conscious disregard of AuxoCap JC's rights, entitling AuxoCap JC to an award of punitive and exemplary damages in an amount to be proven at trial.

### Third Cause of Action

### Unjust Enrichment

### Against Defendants Charis Burrett, Luke Burrett, and TMW Group

58.    AuxoCap JC realleges and incorporates by reference the allegations against Defendants Charis Burrett, Luke Burrett, and TMW Group contained in paragraphs 1 through 57 as though set forth fully herein.

59.    By virtue of the conduct alleged, Defendants received and retained monetary benefits directly traceable to AuxoCap JC's $1,600,000 loan, including but not limited to (i) the $500,000 diverted to Luke Burrett on August 13, 2024, (ii) funds applied to Charis and Luke Burrett's personal expenses, and (iii) funds used to support Defendants' other businesses, including the Bellflower Dispensary.

60.    Defendants have been enriched by their receipt and retention of these benefits, and it would be unjust for Defendants to retain such benefits at AuxoCap JC's expense because Defendants obtained them through the improper diversion of loan proceeds, manipulation of corporate records, concealment of material facts, and dissipation of collateral pledged to AuxoCap JC.

61.    As a direct and proximate result of Defendants' misconduct, AuxoCap JC has suffered damages in an amount to be proven at trial.

62.    Equity and good conscience require that Defendants make restitution to AuxoCap JC of the benefits they wrongfully obtained, including but not limited to disgorgement of all amounts diverted from the Borrower and traceable to AuxoCap JC's loan proceeds.

63.    Defendants Charis and Luke Burrett's conduct was fraudulent, malicious, and oppressive, and carried out with willful and conscious disregard of AuxoCap JC's

rights, entitling AuxoCap JC to an award of punitive and exemplary damages in an amount to be proven at trial.

### Fourth Cause of Action

**Tortious Interference with Contract**

**(Promissory Note & Pledge and Security Agreement)**

**Against Defendants Charis Burrett and Luke Burrett**

64.    AuxoCap JC realleges and incorporates by reference the allegations against Defendants Charis and Luke Burrett contained in paragraphs 1 through 63 as though set forth fully herein.

65.    A valid and enforceable contract existed between AuxoCap JC and the Borrower in the form of (i) the Promissory Note and (ii) the Pledge and Security Agreement.

66.    Charis and Luke Burrett knew of these contracts at all relevant times by virtue of their roles as Managers and "partnership representatives" of the Borrower and their direct involvement in the Borrower's finances, books, and records. In particular, Charis Burrett signed the Promissory Note and the Pledge and Security Agreement on behalf of both The Medicine Woman and TMW JC Operations.

67.    With full knowledge of AuxoCap JC's contracts, and acting for their personal advantage and outside the scope of their authority as agents of the Borrower, Charis and Luke Burrett intentionally and wrongfully engaged in acts designed to induce a breach of, or otherwise disrupt, the Borrower's performance, including by diverting substantial loan proceeds and company funds to Defendants and their other businesses, falsifying and manipulating financial records to conceal the diversion and nonpayment of vendors, stripping the Borrower of assets and value pledged to AuxoCap JC, encumbering the Borrower with liabilities that rendered performance of its contractual obligations impracticable or impossible, permanently closing the Jersey City Dispensary, and causing the Borrower to file the Deed of Assignment for the Benefit of Creditors.

16

68.   Charis and Luke Burrett's intentional conduct caused the Borrower to breach its contracts with AuxoCap JC, including but not limited to the failure to make required interest payments, the occurrence of an Event of Default under the Promissory Note; the impairment and devaluation of the collateral securing the loan; and filing of the Deed of Assignment for the Benefit of Creditors, the occurrence of an Event of Default under the Promissory Note.

69.   As a direct and proximate result of Charis and Luke Burrett's interference, AuxoCap JC has suffered damages in an amount to be proven at trial.

70.   Charis and Luke Burrett's conduct was fraudulent, malicious, and oppressive, and carried out with willful and conscious disregard of AuxoCap JC's rights, entitling AuxoCap JC to an award of punitive and exemplary damages in an amount to be proven at trial.

### Fifth Cause of Action

### Conversion

### Against Defendants Charis Burrett and Luke Burrett

71.   AuxoCap JC realleges and incorporates by reference the allegations against Defendants Charis and Luke Burrett contained in paragraphs 1 through 70 as though set forth fully herein.

72.   As set forth above, AuxoCap JC holds a first priority security interest in all assets of the Borrower, including any and all cash, proceeds, funds, credits, licenses, rights, fixtures, and other personal property, together with all proceeds thereof.

73.   Upon the Borrower's failure to make a required interest payment, and Event of Default under the Promissory Note, AuxoCap JC acquired an immediate right to possess the collateral and all identifiable proceeds thereof.

74.   Defendants Charis and Luke Burrett wrongfully exercised dominion and control over AuxoCap JC's collateral and identifiable proceeds in a manner inconsistent with AuxoCap JC's rights by, among other things, diverting $500,000 on

August 13, 2024 to repay Luke Burrett's personal debt; diverting additional funds to themselves and to the Bellflower Dispensary and its owner, TMW Group; using Borrower's funds to pay personal expenses; failing to pay vendors while manipulating records to conceal nonpayment; stripping, dissipating, and devaluing collateral; and causing the Borrower to file the Deed of Assignment for the Benefit of Creditors without AuxoCap JC's consent.

75.    Charis and Luke Burrett's disposition and control of the foregoing funds and property was unauthorized, exceeded the scope of their authority as agents of the Borrower, and was in direct contravention of AuxoCap JC's ownership and immediate right to possession of the collateral and its proceeds.

76.    Charis and Luke Burrett's conduct constitutes conversion because (i) AuxoCap JC had ownership and an immediate right to possession of the personal property described above, including the collateral and identifiable proceeds; (ii) the Burretts disposed of and exercised control over that property in a manner inconsistent with AuxoCap JC's rights; and (iii) AuxoCap JC suffered damages as a result.

77.    As a direct and proximate result of Charis and Luke Burrett's conversion, AuxoCap JC has suffered damages in an amount to be proven at trial.

78.    Charis and Luke Burrett's conduct was fraudulent, malicious, and oppressive, and carried out with willful and conscious disregard of AuxoCap JC's rights, entitling AuxoCap JC to an award of punitive and exemplary damages in an amount to be proven at trial.

## **Sixth Cause of Action**

### **Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

### **Against Defendants Charis Burrett, Luke Burrett, and TMW Group**

79.    AuxoCap JC realleges and incorporates by reference the allegations against Defendants Charis Burrett, Luke Burrett, and TMW Group contained in paragraphs 1 through 78 as though set forth fully herein.

80.    California Business and Professions Code § 17200, the Unfair Competition Law, prohibits "any unlawful, unfair or fraudulent business act."

81.    As alleged herein, Defendants' acts constitute unlawful, unfair, and/or fraudulent business acts and practices in California within the meaning of the Unfair Competition Law, including: (i) Charis and Luke Burrett fraudulently induced AuxoCap JC to advance a $1,600,000 working capital loan to the Borrower; (ii) Charis and Luke Burrett fraudulently diverted the Borrower's loan proceeds and funds to themselves and their other businesses; (iii) Charis Burrett, Luke Burrett, and TMW Group unjustly enriched themselves to the detriment of AuxoCap JC; (iv) Charis and Luke Burrett tortiously interfered with the Promissory Note and the Pledge and Security Agreement; and (v) Charis and Luke Burrett converted AuxoCap JC's collateral and all identifiable proceeds thereof.

82.    Defendants, whether individually or collectively, participated in and knowingly benefitted from the unfair, unlawful, and fraudulent practices by receiving and utilizing funds traceable to the misappropriated loan proceeds and company funds and by concealing or facilitating the diversion and dissipation of collateral.

83.    As a direct and proximate result of Defendants' unfair competition, AuxoCap JC has lost money or property sufficient to constitute an injury in fact.

84.    Accordingly, AuxoCap JC seeks all relief available under the Unfair Competition Law, including restitution and injunctive relief.

### **DEMAND FOR RELIEF**

WHEREFORE, AuxoCap JC respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally as appropriate, and award AuxoCap JC the following relief:

1.    Preliminary and permanent injunctive relief freezing, preserving, tracing, and repatriating all funds and assets directly or indirectly traceable to AuxoCap JC's loan proceeds or collateral, restraining any further transfers outside the ordinary

course of business, compelling preservation and production of books and records, and authorizing expedited and third-party discovery to locate diverted assets;

2.    Appointment of a receiver, special master, or independent accountant, as necessary and appropriate, to take possession of, safeguard, manage, and account for assets and records relating to AuxoCap JC's loan proceeds or collateral, to marshal and preserve collateral and traceable property, and to report to the Court;

3.    Imposition of a constructive trust and equitable lien over all funds, accounts, receivables, inventory, equipment, licenses, and any other property, wherever located and by whomever held, that is traceable to AuxoCap JC's loan proceeds or collateral, together with an order for turnover of such property;

4.    Compensatory, consequential, and general damages, including all principal, accrued but unpaid interest, default interest, costs, diminution and impairment of collateral, and other losses caused by Defendants' misconduct, in an amount to be proven at trial;

5.    Restitution, disgorgement, and an accounting of all benefits wrongfully obtained by Defendants from or traceable to the loan proceeds or collateral;

6.    Punitive and exemplary damages;

7.    Declaratory relief confirming AuxoCap JC's rights and priority in collateral and traceable property and Defendants' obligations with respect to the same;

8.    Pre- and post-judgment interest in an amount according to law;

9.    Costs of suit; and

10.   Such other and further relief at law or in equity as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action on all claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  January 20, 2026          BLANK ROME LLP


                                  By: /s/ Cheryl S. Chang
                                        Cheryl S. Chang
                                  Attorneys for Plaintiff
                                  AUXOCAP JC LLC